## UNITED STATES v. SNOW et al.

(District Court, D. Massachusetts. December 23, 1925.)

No. 6208.

1. **Searches and seizures ⬥1—Search warrant cannot be used to obtain evidence.**

A search warrant cannot be used to obtain evidence.

2. **Intoxicating liquors ⬥249—Indictment held not to limit right of search under Espionage Act.**

Indictment for conspiracy to smuggle liquor into this country from vessels on the high seas *held* not to limit right of search under Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and Criminal Code, § 37 (Comp. St. § 10201.)

3. **Criminal law ⬥395—Burden on government, to justify search, to show that seized books, papers, and documents were means or instrumentalities of crime.**

On motion to quash search warrant and suppress evidence, and petition for return of property seized under Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and Criminal Code, § 37 (Comp. St. § 10201). Burden was on government, to justify search, to show that books, papers, and documents seized were means or instrumentalities of crime.

4. **Searches and seizures ⬥7—Warrant might be construed as including annexed affidavit in determining whether things seized were particularly described.**

In determining whether any of things seized under search warrant were "particularly described," within requirements of Fourth Amendment, warrant might be construed as including annexed affidavit, which was incorporated into it by reference and was attached thereto.

5. **Searches and seizures ⬥7—Things seized under search warrant held not "particularly described," within requirements of Fourth Amendment.**

Things seized under search warrant issued under Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and Criminal Code, § 37 (Comp. St. § 10201), *held* not "particularly described," within requirement of Fourth Amendment, by description as "letters, tickets, papers, records, and books."

6. **Searches and seizures ⬥1—Espionage Act not unduly restricted in enabling government to obtain possession of means by which crime was committed.**

While Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and Criminal Code, § 37 (Comp. St. § 10201), has no evidential purpose, it has an important legitimate use, which ought not to be unduly restricted, in enabling government to obtain possession of instrumentalities of crime, as the "means" by which crime was committed.

Fred K. Snow and another were indicted for conspiracy to smuggle liquor into this country from vessels on the high seas. On motions to quash search warrant and suppress evidence, and petition for return of property seized. Case to stand for further hearing.

Harold P. Williams, U. S. Atty., and George R. Farnum, Asst. U. S. Atty., both of Boston, Mass.

Joseph V. Carroll, of Boston, Mass., for defendants.

MORTON, District Judge. These are motions to quash a search warrant and suppress evidence, and a petition for the return of property seized. They were heard together in open court. The only evidence submitted was the original search warrant with the annexed affidavit. It was agreed that books, papers, and documents, substantially as stated in the petition, had been seized by the United States officers and are now held by the government with the intention to use them as evidence against the defendants.

The search warrant was issued by a United States commissioner. It recites that he has received an affidavit, "naming and describing certain property and papers that he (the affiant) has reason to believe and does believe have been used and are being used as a means of committing a felony in violation of title XI of the Espionage Act aforesaid, section No. 37 of the Criminal Code of the United States, namely letters, tickets, papers, records and books" (search warrant). The place to be searched was sufficiently described; there is no question on that part of the warrant. The affidavit is annexed to and incorporated in the warrant. It sets forth that the affiant, King, took a message from "a French schooner, a rum runner," to the defendants at a certain office in Boston; that he was afterwards engaged by the defendants to carry messages to "various vessels on Rum Row and back pertaining to arrangements for importing liquor into the United States"; that during this work he delivered to the defendants "various letters and papers containing suggestions, plans, and arrangements for supplying the various vessels on Rum Row with stores and necessities (sic), and for bringing in the liquor through

the Coast Guard blockade into the country, which letters he had seen from time to time among the files in said office"; that he had seen there various tickets which are commonly in use for the purpose of obtaining deliveries of liquor from vessels on Rum Row, and other papers, records, and books, pertaining to the business of rum-running conducted by said defendants, in said office; that he saw said letters, papers, tickets, and books at said office on the day before his affidavit. There is no allegation in the affidavit that at the time when the search warrant was issued the defendants were using the letters, books, papers, and documents referred to in the commission of a crime, nor does the affidavit taken as a whole show that such was the fact.

[1] It has been held in the strongest terms by the Supreme Court of the United States that a search warrant cannot be used to obtain evidence: "They [search warrants] may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but that they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken." Clarke, J., Gouled v. United States, 255 U. S. 298, 309, 41 S. Ct. 261, 265 (65 L. Ed. 647).

In Re No. 191 Front St., 5 F.(2d) 282, 285 (C. C. A. 2d), the rule is thus stated: "It is not every kind of property that may be seized under a search warrant. It is intended that the warrant be issued with the privilege to seize such property as was used as the means of committing a felony. All papers and documents which afford evidence that a felony has been committed, but which were not the means of committing it, are immune from seizure." Manton, J.

Such being the law, the questions are whether the present seizure comes within it, and whether the books and papers which have been seized were sufficiently described in the warrant.

[2] The indictment, which is for conspiracy to smuggle liquor into this country from vessels on the high seas, has been referred to as limiting the right to search; but I do not think it has that effect. There is nothing in the statute which conditions the issue of a search warrant on a pending prosecution and no sufficient reason for reading such a limitation into the statute.

[3] The burden is upon the government to show that these books, papers, and documents which it seized were means or instrumentalities of crime. They have not been submitted to the court for inspection, and there is no description of them except the rather general one contained in King's affidavit. The manner in which they were criminally used is not described. It would, however, be too technical to direct the return of them upon the ground of failure of proof. If the tickets mentioned in the affidavit are like those which have been referred to in other smuggling cases, they might well be regarded as means or instrumentalities of crime; it is not so easy to see how letters or books could be of that character. The questions raised must be determined as to each of the things seized. This cannot be done without a more exact description of them and of the way in which they were used. The case should stand for further hearing on this point.

[4, 5] There is also the further question whether any of the things seized were "particularly described" within the requirements of the Fourth Amendment. I see no sufficient reason why the warrant may not properly be construed as including the annexed affidavit, which is incorporated into it by reference and is attached thereto. The language of the warrant itself, viz. "letters, tickets, papers, records, and books," is plainly insufficient. The affidavit refers to "various letters and papers containing suggestions, plans, and arrangements for supplying the various vessels on Rum Row * * * and for bringing in liquor through the Coast Guard blockade into the country, which letters I have seen from time to time among the files in said office," and also "various tickets on said premises which are commonly in use for the purpose of obtaining deliveries of liquor from vessels on Rum Row, and other papers, records, and books pertaining to the business of rum-running conducted by said Snow and said Savastano in said office."

[6] The government is proceeding against persons suspected of felony. It can hardly be expected to have detailed knowledge of the exact means or instrumentalities which the defendants used. While such a proceeding must not be used as a means of fishing through a suspected person's papers in an effort to obtain evidence against him (cases supra), as to things which may properly be reached by a search warrant some looseness of description ought to be allowed. The

statute (the Espionage Act [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v]) has no evidential purpose; but it has an important legitimate use, which ought not to be unduly restricted, in enabling the government to obtain possession of. the instrumentalities of crime, the "means" by which crime was committed.

Case to stand for further hearing.