**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank Peter BALISTRIERI, Defendant-Appellant.**

**No. 18223.**

United States Court of Appeals, Seventh Circuit.

Jan. 14, 1971.

Rehearing Denied Feb. 10, 1971.

---

Maurice J. Walsh, Carl M. Walsh, Chicago, Ill., for defendant-appellant; Dominic Frinzi, Milwaukee, Wis., of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Richard B. Buhrman, Joseph M. Howard, Attys., Tax Division, U. S. Dept. of Justice, Washington, D. C., Frank J. Violanti, U. S. Atty., Springfield, Ill., for plaintiff-appellee; David J. Cannon, U. S. Atty., Milwaukee, Wis., of counsel.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and PELL, Circuit Judge.

CASTLE, Senior Circuit Judge.

Defendant-appellant, Frank Peter Balistrieri, was convicted following a jury trial on two counts of an indictment charging him with income tax evasion for the years 1959 and 1960 by filing false and fraudulent returns in violation of 26 U.S.C.A. § 7201. He was fined $5,000 on each count and was sentenced to two concurrent two-year prison terms.

On appeal this Court affirmed. United States v. Balistrieri, 7 Cir., 403 F.2d 472. The Supreme Court initially denied certiorari (394 U.S. 985, 89 S.Ct. 1463, 22 L.Ed.2d 761). In response to a petition for rehearing filed by the appellant, which petition asserted that there may have been illegal electronic eavesdropping of appellant's conversations on premises at 645 North Michigan Avenue, Chicago, Illinois, the Solicitor General stated that after investigation it had been determined that appellant was overheard during the course of an electronic surveillance of those premises, and suggested that the case be remanded to the District Court for further proceedings. The Supreme Court granted the petition for rehearing, vacated its order denying certiorari, vacated the judgment of this Court, and remanded the case to the District Court for further proceedings in the light of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 and Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (395 U.S. 710, 89 S.Ct. 2032, 23 L.Ed.2d 654).

Subsequent to the remand by the Supreme Court but prior to the District Court hearing conducted pursuant thereto, the appellant filed a motion for a new trial based on allegedly newly discovered evidence favorable to the appellant which it is asserted the prosecution concealed or failed to produce although its existence was known to the government.

After a hearing on both phases of the matter, and the making and entering of findings of fact and conclusions of law, the District Court denied the motion for a new trial; concluded that the appellant's conviction was not tainted by evidence or other fruits stemming from the unlawful surveillance conducted while he was present and participated in a conversation at 645 North Michigan Avenue, Chicago, Illinois, on January 13, 1965; and entered a new final judgment of conviction and sentence, reimposing the original fines and concurrent two-year prison terms.

The record discloses that during the period between October 2, 1964 and April 17, 1965 the government conducted an unlawful electronic surveillance of certain premises located at 645 North Michigan Avenue, Chicago, Illinois. The court examined, *in camera,* the logs relating to this surveillance and found that they reflect that during the entire period thereof the appellant was present on only one occasion, i. e., January 13, 1965. The court also examined, *in camera,* the complete "airtel" relating to the surveillance on January 13, 1965. The portion of the log for January 13, 1965 which reflects the appellant's overheard conversation, and the portion of the "airtel" dated February 12, 1965 which relates to such conversation, were made available to the appellant.

■ The appellant does not urge that he is entitled to a new trial because of the January 13, 1965 overhearing. He concedes that "this material apparently does not bear upon any charge of tax evasion". What appellant does contend with respect to the unlawful eavesdropping issue is that because of the nature of the government's activities and conduct in the premises this Court in the exercise of its supervisory power over the administration of criminal justice in the federal courts should reverse appellant's conviction and dismiss the indictment. In this connection the appellant seeks to impeach the integrity of the government's representation that it has now made a full and complete disclosure of all of its unlawful eavesdropping conducted against appellant. To this end appellant points to the government's re-use of the tapes used to record the unlawfully overheard conversation, with the result that the government has thereby made unavailable the best evidence of what was actually overheard. He contends that this, coupled with what he characterizes as a partial and edited version of the overhearing represented by

the portion of the log and the portion of the "airtel" to which he was given access, and the piecemeal disclosures of the eavesdropping, demonstrates that there has been no adequate showing on the part of the government that this is the total of the eavesdropping and that the evidence presented on trial is untainted. We disagree.

Appellant's argument based on the erasure of the original tape recording of overhearings by re-use of the tapes after logs had been prepared therefrom was also made on the earlier appeal herein, and it was rejected by this Court. United States v. Balistrieri, 7 Cir., 403 F.2d 472, 476–477. Such an argument was again rejected in United States v. Mirro, 7 Cir., 435 F.2d 839 (Opinion filed December 15, 1970) where the following observation, here pertinent, was made:

> "Neither does the fact that the original tapes were destroyed render the available evidence on the transcribed logs inadequate. It is the general practice of the F.B.I. to use logs rather than tapes in its investigations. The tapes are usually erased or destroyed after their transcription into logs. There was no evidence at the hearing that this method of transcription lacked authenticity."

And, the additional consideration to which appellant makes reference—the piecemeal disclosures [1]—attests to the government's sincerity in making a full and complete disclosure rather than an attempt to frustrate appellant in obtaining a total truthful discovery of the extent and substance of unlawful eavesdropping with respect to which he has standing to object. Moreover, when the Supreme Court remanded this case for further proceedings in the light of *Alderman* and *Giordano* it did not, in our judgment, extend an invitation to the District Court, or to this Court, to fashion and apply a more drastic remedy—

---

1. This appeal involves a disclosure of an instance of unlawful electronic eavesdropping additional to that which had been disclosed at the commencement of the trial in which appellant was convicted, and which was considered by this Court on the earlier appeal (403 F.2d 472, 474–475 and 476–477).

reversal of conviction and dismissal of the indictment—for unlawful eavesdropping. As we observed in United States v. Mirro, *supra,* "We are bound to follow * * * and will not expand * * *" *Alderman* and *Giordano.*

█ We turn to consideration of appellant's contention that the District Court's denial of his motion for a new trial requires the reversal of his conviction. Motions for new trial are addressed to the sound discretion of the trial judge. United States v. Bruni, 7 Cir., 359 F.2d 802, 806. Our review of the exercise of that discretion is a limited one. United States v. Bolden, 7 Cir., 355 F.2d 453, 459. Absent a clear showing of abuse of discretion, the action of the trial judge in determining the probable effect of newly discovered evidence in changing the result of the trial must stand. *Cf.* United States v. Lewis, 6 Cir., 338 F.2d 137, 139.

In the trial which culminated in appellant's conviction of income tax evasion the government presented its case on the "net worth theory". The three most likely sources of unreported taxable income for the years involved as disclosed by the evidence adduced, pointed to by the prosecutor in argument to the jury, and relied upon by this Court in affirming the appellant's conviction, are Hotel Roosevelt, Inc., Ben-Kay, Inc.—both tavern enterprises—and Midwest Scrap Metal Company. In United States v. Balistrieri, 7 Cir., 403 F.2d 472, 480, we said in this connection:

"As a final attack on the denial of the motion for acquittal at the close of the Government's evidence, defendant contends that the prosecution failed to prove that the increases in net worth arose from taxable sources. However, the Government fulfilled its burden under the net worth method by: (a) giving defendant credit for all loans and for the proceeds of a life insurance policy received in 1958; (b) proving that the increases did not arise from gifts or inheritance; and proving three 'likely' sources of taxa-

ble income—Hotel Roosevelt, Inc., Ben-Kay, Inc., and Midwest Scrap Metal Company. In Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 136, 99 L.Ed. 150 (1954), the Court held that '[i]ncreases in net worth, standing alone, cannot be assumed to be attributable to current taxable income. But proof of a likely source, from which the jury could reasonably find that the net worth increases sprang, is sufficient.' Cf. United States v. Mackey, 345 F.2d 499, 507 (7th Cir. 1965). The record, therefore, clearly indicates that the evidence presented to the jury was sufficient to support its verdict."

Appellant operated and served as president of Hotel Roosevelt, Inc. and Ben-Kay, Inc. Another business in which the appellant had a substantial interest was Tower Tavern. Like Hotel Roosevelt, Inc. and Ben-Kay, Inc. it also was a tavern business. In his summation to the jury the prosecutor after pointing to other likely sources of unreported income, including the three primary likely sources to which we have made reference, referred also to Tower Tavern. He observed that the tavern business is a cash business and argued to the effect that unreported income might have been derived from one of these businesses.

The evidence which appellant asserts is newly discovered and which he claims the prosecution concealed or failed to produce, although its existence was known to the government at the time of the trial, falls into two categories.

█ The first category is evidence, acquired by the government in the course of an investigation with respect to unpaid employee withholding tax due from Tower Tavern, that Peter F. Balistrieri, a brother of the appellant, was the operator of Tower Tavern, the responsible officer of that corporation, and had general supervision over its affairs. Insofar as the appellant is concerned the facts with respect to the actual operation of Tower Tavern can hardly be regarded as newly discovered

evidence. He had a substantial interest in Tower Tavern. It would strain credulity to assume that he did not know the business was actually operated by his brother, rather than himself. Moreover, that fact would in no way foreclose the likelihood that the business could have been a source of unreported income to the appellant. Thus, the evidence with respect to the operation of Tower Tavern neither qualifies as newly discovered evidence which warrants consideration on a motion for a new trial, nor does it possess any probative value which might change the result of the trial.

■ The second category of evidence relied upon by the appellant in connection with his motion for a new trial relates to information contained in the income tax returns for the year 1961 filed by Peter F. Balistrieri,[2] appellant's brother, and by Jennie Alioto, appellant's bookkeeper and sister-in-law. These returns disclose that each of these taxpayers reported 1961 income received from Midwest Scrap Metal Company. The amounts so reported when combined approximately equal the amount of net profit from Midwest which the government's trial evidence indicates was the annual amount of unreported income received by appellant from Midwest in the years 1959 and 1960. There was evidence at trial showing that appellant was sole owner of Midwest in 1959 and 1960, the only tax years involved. The disposition made of Midwest's receipts in 1961 does not, on the record before us, bear such relevance to the likelihood of Midwest having been a source of unreported income received by the appellant in 1959 and 1960, that the probable effect of this tax return evidence would be to change the result of the trial. This is especially so in view of evidence contained in the record with respect to alternative likely sources of unreported income.

We perceive no basis for concluding that the District Court's denial of the motion for new trial constituted an abuse of discretion.

In view of the foregoing, the judgment order appealed from is affirmed.

Affirmed.

---

2. This return was filed jointly by Peter F. Balistrieri and Mary Balistrieri.