UNITED STATES of America

v.

Roy O'BAUGH, Dolphin G. Thompson, and Betty L. Thompson.

Crim. No. 1529-67.

United States District Court
District of Columbia.

Sept. 30, 1969.

Seymour Glanzer, Asst. U. S. Atty., Washington, D. C., for the Government.

Jess Larson, Washington, D. C., for defendant Dolphin G. Thompson.

MEMORANDUM OPINION

LEONARD P. WALSH, District Judge.

This matter comes before the Court on an Order of remand from the Court of Appeals for the District of Columbia Circuit, dated August 13, 1969, for further proceedings in light of Alderman v. United State, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

On September 11, 1969, the Government filed its brief, and delivered to the Court the Affidavit of The Attorney General and Exhibits consisting of sealed copies of the logs of the overheard conversations, and the authority for installation of the surveillance. Defense counsel filed no opposition.

The facts, briefly stated, are as follows:

Defendants were indicted in a 20 count indictment, charging violations of Sections 656 and 1005, Title 18, U.S.C. and conspiring to commit violations of these

sections. Defendant O'Baugh entered a plea of guilty to certain counts of the indictment. Defendants Thompson were found guilty by a jury, and appealed. The appeal is presently pending in the Court of Appeals. While the case was being appealed, the government discovered through a routine check that defendant Dolphin G. Thompson's name had come up in connection with a wiretap on a foreign embassy. Accordingly, the government petitioned the Court of Appeals to remand the case in light of *Alderman,* supra.

*Alderman* held that the government must disclose to defense counsel the records of intercepted conversations which were obtained illegally by government agents. In determining the question of illegality, the Court's attention is directed first to the question of whether defendant's Fourth Amendment rights were violated.

■ The wiretaps in the present cases were conducted in 1961 and 1963, which is prior to the decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). In Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L. Ed.2d 248 (1969), the Court held that *Katz* was to be given "wholly prospective application." Accordingly, the legality of the wiretaps in this case are to be governed by the law in effect at the time when the conversations were intercepted. The law prior to *Katz* was that pronounced by the Supreme Court in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). To be illegal under *Olmstead,* it must appear that the instruments of the electronic surveillance invaded a "constitutionally protected area." The Court is of the opinion that no such invasion occurred. The wiretap in the present case was not directed at defendant Dolphin Thompson. Since the defendant was not the subject of a wiretap, and since no "constitutionally protected area" of his was invaded, defendant's Fourth Amendment rights have not been violated.

■ The Court next directs its attention to the question of whether the wiretap in this case violated Section 605 of the Federal Communications Act of 1934. Justice Stewart, in his concurring opinion in Giordano v. United States, 394 U. S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969), stated that the question of foreign intelligence surveillance was an open question. The wiretap in the present case was authorized by the Attorney General as necessary to the national defense of this country. The Court is of the opinion that a wiretap authorized by the Attorney General and used solely for the purposes of obtaining foreign intelligence information, as the Court specifically finds in this case as a result of its *in camera* inspection of the exhibits submitted to the Court, does not violate Section 605 of the Federal Communications Act of 1934. (See Opinion of Judge Gasch of this Court in United States v. Stone, et al., 305 F.Supp. 75, dated September 15, 1969).

In addition, as a result of the Court's thorough *in camera* examination of the logs of the recorded conversations, the Court specifically finds that there is no relevance whatsoever between the recorded conversations and the subject matter of this case. This is particularly apparent to this Court, which has the advantage of having tried the case and having read the logs *in camera.* The electronic surveillance occurred in 1961 and 1963, whereas the subject matter of the prosecution in this case came to light as a result of a complaint by a government witness in January of 1967.

■ Accordingly, the Court is of the opinion that since neither defendant's Fourth Amendment rights nor Section 605 of the Federal Communications Act of 1934 were violated, the wiretap used by the government to obtain foreign intelligence information was legal, and defendant is not entitled to the logs of the recorded conversations, nor is he entitled to a hearing on this matter.